Good morning, Your Honor. May it please the Court, my name is Ryan Moore. I represent the appellant, Ms. Valdez. I'll reserve three minutes. I'll watch the clock. Okay. This was a retrial from a false statements case. I'll focus on the testimony of two government witnesses that her statement was false, Witnesses Jackson and Merced, and then I'll focus on the testimony of another witness, a State official, who testified that the State of Arizona officially rejected her identical factual claim in her defense in this case. If there's time, I'll address the jury instruction issue as well. The district court erred in allowing expert testimony from Officer Jackson, a senior citizenship adjudicator from Citizenship and Immigration Services, that Ms. Valdez is not a United States citizen, and he incorrectly precluded that testimony in the first trial. He didn't offer a mere generalized opinion. That's the government's really only response on this, that when he said someone in this situation is not a citizen, he didn't use her name. But he was talking about her in context. He was asked about her A file. He was asked to describe what was in her A file. He did. He was asked if he had concerns with the documents in her A file. And then only at the last minute does the prosecutor switch from talking about Ms. Valdez to an individual or a person, and asks if an individual has these same documents, would that be of concern? And the answer is, yes, it would tell me that they're not a U.S. citizen. So this Court held in de la Cruz that an ultimate issue, a question that either asks for the ultimate issue or here, an answer that volunteers the ultimate legal conclusion, isn't proper merely because you switch from talking about the defendant to talking about a defendant, I'm sorry, an individual or a person. This testimony was inadmissible as the district court correctly ruled in the first trial, which remained the law of the case, because it violated rule 702. It wasn't helpful. It wasn't helpful for a couple of reasons. One, can I ask a more general question, which may be more for your adversary, but maybe you can shed some light on it? It was unclear to me why any of these experts were relevant in any respect. The issue here, as I understood it, correct me if I'm wrong, was whether she submitted a false statement claiming she was born in America when there was another document that seemed to indicate that she was born in Mexico. And so that was the issue. She took the stand, so the jury had the competing accounts, and they concluded, obviously, that they did not believe her, and they convicted. But even before we got to her taking the stand, what was the issue, what was the relevance of any of the expert testimony? Well, I think we agree with that. And I think you're hitting on the same concern the district court had in saying, I don't want an expert to come in and tell the jury that she is or isn't a citizen, because the expert doesn't know where she was born. The expert is in no better position to determine that than the jurors. The issue is really about place of birth. But I'm not sure that the government said they were calling the experts on it. Well, the government had to prove that her statement was false. Her statement is, I'm not a citizen. Well, that has nothing to do with any of these experts. Well, Officer — Go ahead. Officer Jackson was ostensibly called to testify that she had not obtained recognition of derivative or acquired citizenship, which are two of three ways to — that she might have been a citizen. She could have derived a citizenship from a parent's naturalization, acquired it from a U.S. citizen parent if born abroad, or she could have just been born here, which, of course, was the only issue in this case. And so I think it was fair game for Officer Jackson to come in and tell the jury, there are all these ways you can become a citizen, and A and B are not in play here, derived and acquired, and then we move on to talk about the real issue of the case. And that would be like two questions. Which is exactly. And that's what the district court ruled in the first trial Officer Jackson could do, was just get that out of the way. Government can establish those points, and then we'll move on, because the main issue in the case is place of birth. And, of course, he didn't know that and was in no better position to tell the jury about where she was born. And when he tells the jury that she's not a citizen, based just on his review of documents, it's misleading because he has the aura and authority of an expert, but really he has no better ability to make that determination than the average layperson. Kennedy. Counsel, what troubles me in terms of the cumulative error in this case is the fact there was a hung jury, I believe, in the first trial, when the troubling elements that you cite in the second trial were not permitted. Yes, Your Honor. When we look at these things, I know we got Jackson, we got another one, and we got several other jury issues. When we look at these things, cumulatively, I usually don't pay much attention to the whole idea of accumulation. But here, you have a trial, same issues, same people, except certain things weren't permitted and they got a different result. To what degree should that influence our analysis? What is the standard of review for cumulative error in this case? If the Court finds that any of the errors was preserved and is constitutional and the only constitutional error would be the IA's ineffectiveness claim, if the Court reaches that, then the standard of review would be under the for all of the errors, even those that weren't preserved, the higher standard for constitutional error, harmless beyond a reasonable doubt. If none of the preserved errors is constitutional, but if there is still a preserved error, such as the motion for a mistrial based on the officer's blurting out that she'd been arrested before, if any of the errors is preserved, such as that one was, then all of the errors are reviewed under the more probably-than-not harmless standard. Okay. Thank you. The same thing, so, moving on from Officer Jackson, this, a very similar thing happened with Witness Merced, and she's the passport specialist and fraud manager from the Department of State Passport Office. And she's asked, as a fraud prevention manager, to review Ms. Valdez's passport application on the stand, and over pages in the transcript, points out all of her concerns, that's the word that's used repeatedly, with her particular application, telling the jury how to evaluate the evidence, really. And at the end of the day And again, what's the relevance of that? I can't answer that question. She's called as an expert. Well, she was not noticed as an expert. So she's being called as a fact witness? She was. Then she can't express any opinion, can she? No. And in the first trial, she just testified about the process. Here's what happens. Here's how you apply. Here's what happens when someone applies. In this trial, she's By the way, what was the relevance of that? There's no real relevance. Who cares about the process when the only question is whether she lied and said she had been born in the United States or not? Right. But in this case, she eventually testifies as an expert because she's giving opinions, she's testifying about matters that require knowledge and specialized experience. But she shouldn't have been, right? She shouldn't have been permitted to do any of that. And ultimately, at the end of her testimony, she's asked if, would it be of concern, hypothetical question, that a lay witness can't answer. That's a what-if question. Would it be of concern if you're a passport fraud manager and you find that someone has a foreign birth record, and she says, it would tell me that they weren't born, I'm sorry, she says it would tell me that they were born in Mexico. Ties it back to Ms. Valdez, but with Mexico. She wasn't asked about a Mexican birth record. So again, now we have a second witness telling the jury that Ms. Valdez's testimony follows. I mean, if she's not a citizen, if she wasn't born here, then her statement was necessarily false. It's the ultimate legal conclusion in the case. Ms. Rodriguez, now, this is the third witness. This is the State Bureau of Vital Records Operations Chief, another fraud manager. This is the second witness in the government's case-in-chief, and she comes in and talks about a completely separate application that Ms. Valdez filed four months later with the State, not with the Feds. This case is about a passport application, a separate State application, all of the State's concerns with it as a fraud manager, all the reasons why the State rejected it, and why her evidence wasn't sufficient. Again, it's not relevant, it's not helpful, and there's a very substantial risk that jurors will deem any of these three witnesses so much more qualified than they are in their minds that they're going to just abandon their role as fact-finders and decide that they should defer to these folks who seem to know much better than they do. These three witnesses, individually or cumulatively, require a new trial. Let me ---- Sotomayor, well, could you just point me to the place in the record where the expert testimony went over the border and, as it were, and took away the question that the jury was to decide? So first, with respect to Officer Jackson, this was the noticed expert. Excerpts, page 285, that's in Volume III. Okay. With respect to Merced, she's the passport manager. She's asked at Excerpts, Volume II, page 170, and then ultimately on 174 is where she gives the testimony that crosses the line. And Rodriguez's testimony is her entire direct ---- the entire direct of her. I've just got a couple of minutes. Let me ---- I'll also address the jury instruction issue because I think it also plays into a cumulative error analysis. The government had to prove their statement was false. The only jury instruction that addressed the facts ---- so there's an elements instruction and there's a separate defense instruction. The only instruction that addressed the facts told jurors that acquittal was required if they had a reasonable doubt about whether her statement was true, about whether she was born in the United States. And that obviously flips the key fact, false versus true. No instruction told jurors that reason ---- acquittal was required if they had a reasonable doubt about whether ---- about what the government had to prove, which is that she's not born in the United States. So the application ---- she says, I'm a citizen, I was born here. The government had to prove she was not born here to prove falsity. No instruction told the jurors that acquittal was required under those circumstances. So the instruction is incomplete. It captures one of the defendant's theories, but not the other. One theory argued in closing is, here's my defense. I was born here. Here are all my ---- the affidavits I have. Here's my testimony. But even if you don't believe that, maybe you don't think my affidavits are good enough, my other defense is putting the government to its burden to prove beyond a reasonable doubt that I was not born here. So even if you don't believe my defense, there's still the usual defense in this case. But the instructions focus the jurors only on the former, the evidence of birth in the United States, and not on whether or not the government had proved beyond a reasonable doubt that she was not born in the United States. So it relieves the government of that burden and arguably, in effect, flipped the burden to her to prove that she was born in the United States. And if the ---- I'll reserve the remainder of my time. Okay. Very well. All right. Let's hear from the government. Good morning, Your Honor. May it please the Court. I'm Chris Cabanillas from the District of Arizona. Starting with Judge Schroeder's question first, there is no testimony in this case that went beyond the scope of what was permitted. And here's how we know this. Agent Jackson did not testify that the defendant was not a U.S. citizen. That is not what he said. And that is critically important because the defense is suggesting that he exceeded the scope of that ruling below in the first trial, and he did not. But in the context, in the context of it, he was talking about her, then he goes to the end individual, and he goes back to her. And I think that ---- How could it be interpreted in any other way than referring to her? I think that there's a misimpression that's been made on that. Well, I'm just looking at what it says. And no, no. What I mean is the facts. The quote was, so if ---- and this is the question. So if a person gets a border-crossing card with no additional paperwork, and that no additional paperwork refers to if somebody hasn't applied to be a U.S.C., is that of concern for you as an adjudicator? And he said an adjudicator means if he was determining whether or not this person should get a border-crossing card. It would tell me they weren't a U.S. citizen and they were an alien. This is in the context of border-crossing cards. And this gets to your question, Your Honor, about why this testimony was relevant. As the district court noted, and when they were discussing this testimony, that the border-crossing cards and the existence of them was very important because a defendant had to show her Mexican birth certificate to get them, and that went to the falsity of her claim that she claimed to be a U.S. citizen. We actually ---- this gets to the jury instruction argument as well. We already had to prove that her statement that she was a U.S. citizen when she filled out her passport was false. And helping us to do that was the existence of a birth certificate that she never told the State Department about when she applied for her passport. The border-crossing cards and this testimony related to that. But I'm ---- maybe I'm going to follow you. So if the relevance is that you would have to show your Mexican citizenship or something equivalent of it to get the border crossing, that's fine. I understand what you're saying about relevance. But his statement goes well beyond that. Actually, it doesn't, because he's talking about if a person gets a border-crossing card, what does it tell you? It tells you that the person is not a U.S. citizen. And I'd love to quote one thing that I think will help this. The Defense Council was never disputing that U.S. citizens were ---- could not get border-crossing cards. And at day two, page 142, he asks Reynolds, whose testimony isn't even being disputed here, quote, now, the U.S. only gives visas to people who aren't citizens, correct? And she says, correct. And the reason for that, too, Your Honor, is as the defendant notes in opening brief, page 36, the defendant wanted to elicit the evidence that she couldn't get a border-crossing card simply by verbally avowing that she was a U.S. citizen. She had to show some documentation. And so he, during that interchange with Reynolds, is trying to elicit that the U.S. only issues visas to people who aren't citizens, meaning she had to show her Mexican birth certificate because that was the only thing she had. That was what the defense was advocating there. So this stuff about the border-crossing card being reserved for people who are not U.S. citizens was never disputed below. Again, it's reviewed for plain error. But there are reasons why the defense wasn't disputing that below. Because it also dovetailed with that 2010 birth certificate, and that is sort of related to. The defense didn't object to that either because the existence of that application for a 2010 Arizona birth certificate, they admitted it in Exhibit 55, and that was contained in Government 16. So they wanted to show that, and here's how they put it in the first trial. Kennedy. Counsel, before you go on, I want to ask you a question because we're forgetting about the first trial and the law of the case issue. Do you agree that under the law of the case doctrine that the district courts in Lemony ruling in the first trial preventing Jackson from testifying about Valdez's citizenship was preserved in the second trial? I don't have an objection to that. Okay. So wouldn't any such testimony then have been inadmissible in the second trial? It's not that testimony, and that's what's so important, Your Honor. He did not testify that she was not a U.S. citizen, and moreover, the context of that because it was in the context of that and that the defendant also was not disputing that border-crossing cards were reserved for U.S. citizens. In addition, getting back to the 2010 birth certificate — Wait, wait, wait. Say that — that boarding cross — she did not — he did not dispute that border-crossing cards were reserved for U.S. citizens. I'm sorry. Excuse me. Thank you, Your Honor. They're reserved for foreign nationals, non-U.S. citizens. Thank you so much. The 2010 birth certificate, the defendant admitted that because the defense wanted to show that she has done everything she could to try to make her alleged Arizona birth legit. And that is something that you can see if you want to look back to the first trial at ER 94. We're trying to fix her history, is how the first defense counsel put it. So the idea — this is where, actually, I was real surprised to see this argument made that the 2010 birth certificate application was irrelevant, I think they said in the reply brief, pages 12 to 14. The defense admitted that document, just like the government did. The gov wanted to use it because it showed that she used a different name and date of birth in her Arizona documents than she did in her Mexican ones. And I cannot begin to tell you how critical her testimony was, the defendant's testimony, and why it is that any error was not plain here. The defendant took the stand. And as this Court has said in Scholl, and before that in Kenney, if a defendant elects to testify, she risks that if she is disbelieved, the jury's going to find that the opposite of what she says is the truth. She took the stand. She said she thought she was born in Mexico. Jury instruction, link. The jury instruction, if they had found that she believed she was born in Arizona, excuse me, they would acquit her. The defense's first instruction allowed them to do that in the second bit, as well as the government's elements instruction. It said we had the burden of proof. There ain't no burden shifting here. We had the burden of proof to show that she knowingly made a false statement on her passport application, which meant we had to show it was false. And the statement that she is alleged to have made is that she was a U.S. citizen, so we already had to show that was false. So the defendant's argument that something had been admitted that was critical, again, not error, but certainly not plain error. Kennedy. So from your perspective, the defendant herself admitted she thought she was born in Mexico. Well, she admitted that Exhibit 1 was her Mexican birth certificate, and that said that she was born in Mexico. Okay. So she gets the ---- Yeah. And she also admitted, you remember, Agent Offick testified in the government's case. Agent Offick said, she told me during an encounter, I'm born in Mexico. I was born ---- the quote is, born in Magdalena, Jalisco. She gets on the stand, and she admits that. She admits, therefore, that she was born in Mexico. Now, she takes the stand. She adds some embellishment, a carne asada and salsa story. She also said, and this is a jury question that's towards the end of her testimony, almost like a piece de resistance, that after she had already suggested her father had lied and got her birth certificate in Mexico when it wasn't reality, the juror asks, so you're saying your father's a civil servant, and he's asking, and he's saying, and he's asking or lying to other Mexican civil authorities? And she responds, no, he had no reason to lie. Kaboom. I mean, she threw a grenade into her own defense, and it was overwhelmingly strong, the idea that she had different identity in Arizona based on all those Arizona documents, and had a different identity in Mexico based on her Mexican official registration and that Mexican birth certificate that we were fortunate to locate, showed the jury she's being deceptive. And when you're being deceptive in front of a jury, as this Court said in Schull, you do not believe that what she's saying is the truth. So when she said, hey, I'm born in Nogales, Arizona, or I thought I was, they're all wrong, no, you weren't, and here's all the evidence. And so, again, I'd emphasize the defendant's incriminating testimony, which isn't mentioned really in the defendant's briefs, but it shows that if you were to find any error here, number one, it wasn't plain. Almost all of these arguments are unpreserved, and also that it was harmless. I think the only one that was preserved was the apprehensions one, and the district court succinctly demonstrated why that was not worthy of a new trial. The jury instruction issue, too, I'd just like to impress that there was never burden shifting there. You know, the defendant requested the instruction that he suggests is burden shifting, but there wasn't any, because the jury, the big overarching why all this matters, if they wanted to believe that she was either born in Arizona or they wanted to believe that she thought she was born in Arizona, were the instructions adequate to allow them to acquit her, and the answer is absolutely based on the elements instruction as well as the second bit of the defendant's instruction that was given. So for all those reasons, there just is, number one, no error here, number two, it was not plain, and based on all of the testimony, particularly the defendant's incriminating testimony, any error did not violate her substantial rights or was harmless. So we'd ask the Court to affirm. Roberts. Thank you very much. Counsel, you have a little rebuttal time. Thank you. The government talks about the context of Officer Jackson's testimony, and the government says the context is a discussion about visas. The context was Officer Jackson looking at her A file and telling the jury from her A essentially where she was born. The context is at 284 to 85 in the excerpts, and I order the Court to look at that. Do you agree with what your opponent said, that the defendant herself confessed to being born in Mexico? No. She did not do that. She — Did she admit that the birth certificate from Mexico was hers? She admitted that that birth certificate pertained to her, absolutely, and she explained that her father had done that for her, too. And her father had falsified some information. But again, is the opponent not correct, that the jury, once they see that there's some lying going on, can believe whom they wish? The case the government cites when it talks about, you know, the jury may not believe the defendant, those are in the context of sufficiency claims that don't have anything to do with this. And I point the Court to the record. ER 351 is where there's a conversation between Othick, Agent Othick and the defendant. And the government says that in that conversation, she admits to being born in Mexico. Well, ultimately, at page 351, she's asked, so you told him where you were born? And she ultimately says, he just asked me, where are you from? And that's a distinction, because, of course, she was from Mexico. She'd grown up in Mexico. So she could say, I'm from Mexico. The agent says, I asked her where she was born. She says, no, he just asked me where I was from. So she didn't admit to being born in Mexico. She wouldn't actually have knowledge of where she was born. Her father would, or other people would, but not her. Just like all of us, of course. So, I mean, even if she can't admit to something that she doesn't know. I won't do any other critical points. You're over time. Let me ask you something. Well, could you just ask, tell me where, where does the, what is the most important thing that the district court did wrong? There's so much, Your Honor. I mean, this really is a classic cumulative error case, I think, because so much of this testimony shouldn't, had no purpose in this trial, other than just to tell the jurors how to evaluate the evidence. Okay. All right. Thank, thank you both for your arguments. Very, very helpful. Thank you. The case just argued as submitted.
judges: Schroeder, M. Smith, Rakoff